### CLARK v. CHOCTAWHATCHEE ELECTRICAL COOPERATIVE, Inc.

Circuit Court, Walton County.

February 26, 1957.

Charles A. Wade, Adams & Wade, Crestview, and S. M. Preacher, DeFuniak Springs, for plaintiffs.

A. G. Campbell, Jr., DeFuniak Springs, and James B. Watson, Watson & Brown, Pensacola, for defendants.

HAROLD B. CROSBY, Circuit Judge.

At the close of the evidence defendant moved for a directed verdict in its behalf, and the court reserved ruling on the motion.

The court has reviewed the testimony in this cause and finds that the plaintiffs have failed to establish the existence of direct physical impact or trauma upon which their claim for damages growing out of personal injury to the plaintiff Josephine Clark must be predicated. Viewed in the light most favorable to the plaintiffs and upon the theory that electrical shock is a direct physical impact or trauma within the meaning of the rule laid down by our Supreme Court, the testimony on this point is nevertheless of such uncertain and speculative character as to fail to establish a prima facie case.

Mrs. Clark Testified on direct examination as follows—

Will you please tell the gentlemen of the jury just what happened on this day of January 14, 1955. —Well, I opened the station at seven o'clock, and I was ironing. I did that to help with my housework while I was running the station. Approximately ten fifteen I saw this service truck go by, but I didn't know that they stopped at my place. Later I went out to put some Coca Colas in the box, which is outside, and I saw men working on the pole down below the house, north of the house. When I went back inside and just the time I got in there it looked like there was a loud roaring and popping and this whole station looked like it was lighted up like a welding torch. My tongue felt thick and my ears felt stopped up and I felt like I was twisted and my legs ached awfully.

and on cross examination—

You were not ironing at the time you heard the roaring?—I don't know whether I had the iron in my hand or not, but I was behind the board, but I don't know whether I had picked up the iron or not.

\* \* \*

You cannot testify that you received an electrical shock, can you?—Mr. Campbell, I don't know the effects of an electrical shock unless I had one there.

Do you recall in January of this year when this case was tried in Walton County? — Yes.

You testified at that time, didn't you? — I testified that I didn't know if I had an electrical, or I don't know what an electrical shock is, if I didn't get one then, I never had one.

Let me ask you if I asked you these questions and you gave these answers: "Q. Mrs. Clark, getting back a moment to the filling station, on January 14, 1955, did you receive at any time an electric shock, any burns, or were there any burns or bruises?" Your answer: "A. I didn't have any burns. I can't say whether or not I received an electrical shock. \* \* \*." "Q. Did you have any wounds or bruises immediately following that occurrence up there? A. I had one bruised place on my leg. I figure I got that when I fell in the yard." Did you testify to that in January? —I did. It is just as I told you, I don't know whether I got an electrical shock or not.

The medical testimony is equally uncertain in this respect. Dr. Holmes testified—

**Cross Examination by Mr. Campbell —**

Let me ask you this: Did you send Mrs. Clark to Dr. Sherman because you had come to the conclusion that her difficulty was due to emotional shock rather than physical injury? —Yes, I felt that her emotional and mental balance had been very disturbed by the accident. However, I did not, since I knew that she was going to him, I did not attempt to actually eliminate the possibility that she had experienced physical injury.

You have testified previously in this case, have you not? — Yes.

Did you not at that time testify that you found from your examination of Mrs. Clark no evidence of any physical injury or trauma? — That's right, I found no evidence of burns. I found that the reflexes in the legs appeared to be within normal range. However, I hope I put a limitation as to my judgment on that at that time.

**Redirect Examination by Mr. Wade—**

An electrical shock could cause an emotional shock, could it not?

Mr. Campbell: Object to that. The doctor has not qualified himself as an expert on electricity.

The Court: Over-ruled.

Go ahead. I believe you answered "Yes" in the other transcript, didn't you? — I think that any form of accident could precipitate emotional disturbance.

That includes an electrical shock? — Yes.

**Recross Examination by Mr. Campbell —**

I believe you testified, on cross examination, that you found from your examination of Mrs. Clark no evidence of electrical shock? — I found no evidence of burns, electrical burns to the skin.

Did you testify to this in January, 1956, when this case was first tried: "Q. You stated to Mr. Wade on one or two occasions that you thought this nerve dermatitis and these other things were brought on by shock. You were referring to an emotional shock and not an electrical shock, were you not?" You answered? "A. No. I saw her ten days later, and of course she could have been healing. Q. But at the time you found no evidence of burns on her skin. Is that correct? A. Yes." You have repeatedly stated, both today and before, that your opinion was that her difficulty was occasioned through emotional upset rather than physical trauma, have you not? — Yes.

Physical trauma means physical impact or injury or bruise? — Yes.

## Dr. Sherman testified—

**Redirect Examination by Mr. Wade —**

The fact of Mrs. Clark's emotional upset being transferred to the physical and the condition of Mrs. Clark when you first saw her, could that not have been caused by electrical shock? — My mind wandered off a moment. Ask me again.

Could an electrical shock have caused Mrs. Clark's condition when she came to see you, her mental condition, and also transferred over to physical trouble, been caused by electrical shock? — If I may try to get myself clear, if she had had an electrical shock could this result in symptoms such as hers?

Yes. — Yes.

**Recross examination by Mr. Campbell —**

Mrs. Clark didn't tell you she had an electrical shock, did she? — No, I don't believe she did.

The court has no doubt that an electrical shock caused by the negligence of a defendant and transmitted in a reasonably foreseeable manner to the body of a plaintiff constitutes a direct physical

impact that would support a claim both for the physical injury and the accompanying or resulting mental anguish or emotional disturbance flowing therefrom. And if, in such event, the emotional disturbance in turn produced physical symptoms such as the temporary paralysis of which Mrs. Clark complained, doubtless she could recover for these resulting physical injuries also.

Mrs. Clark, however, testified that she did not know whether she had received an electrical shock. She did describe certain sensations and symptoms that she experienced at the time the "loud roaring and popping" occurred, but the evidence does not show whether these symptoms and sensations are those associated with electrical shock. She likewise did not know whether her hand was on the iron, and the evidence does not otherwise show any means whereby the electric current could have been transmitted to her body. The medical testimony at most is to the effect that electrical shock *could* have caused the emotional disturbance and consequent physical ailments of which Mrs. Clark complained. While this testimony amply supports the conclusion that Mrs. Clark sustained a serious emotional disturbance resulting in physical disability, it is not sufficient to justify the conclusion that she actually suffered an electrical shock.

Ordinarily, with the evidence in this status, the court might be disposed to consider the propriety of granting a new trial. The present case has, however, now been tried twice and the evidence on the point in question was substantially the same at both trials. There accordingly appears little likelihood that under the existing law a third trial would materially alter the question now before the court.

There appears to be little doubt that the plaintiff, Mrs. Clark, suffered substantial injuries from the emotional disturbance produced by the incident that gave rise to this litigation; and, if the question were open, this court would be inclined to follow those authorities holding that the genuineness and extent of her injuries, whether growing out of physical or emotional trauma, should be left to the determination of the jury under appropriate safeguards. Any doubt as to the posture of the Florida law on the subject has, however, been resolved by the decisions in Kirksey v. Jernigan, Fla. 1950, 45 So. 2d 188, 17 A.L.R. 2d 766, and Crane v. Loftin, Fla. 1954, 70 So. 2d 574, where our Court adopted the rule that in the absence of facts such as reasonably imply malice, or where, from the entire want of care or attention to duty, or great indifference to the persons, property or rights of others, such malice will be

imputed as would justify the assessment of exemplary or punitive damages, there can be no recovery for personal injuries resulting from fright and mental anguish unaccompanied by direct physical impact or trauma.

The right of trial by jury is fundamental in our law, and the court should not undertake to substitute its judgment upon an issue of fact for that of a jury. See Teddleton v. Florida Power & Light Co., 145 Fla. 671, 200 So. 546 (1941) ; Bessent v. Board of Bond Trustees, 92 Fla. 292, 109 So. 597 (1926). In order that there may be something for the jury to determine, however, there must be an issue—a disputed question of fact concerning which there is at least some substantial evidence to support the opposing contentions of each party. If either party fails to bring forward some substantial evidence upon such a question of fact, then there is no issue and consequently nothing to be submitted to the jury for determination. See Biscayne Trust Co. v. Pennsylvania Sugar Co., 103 Fla. 155 (1931) ; Stevens v. Tampa Electric Co., 81 Fla. 512, 88 So. 303 (1921). Careful review of the evidence in the present case impels the court to the conclusion that the plaintiff failed to bring forward substantial evidence showing direct physical impact or trauma to the person of Mrs. Clark, and accordingly as to this point there was no issue for the jury. There being no showing of malice or wantonness on the part of the defendant, nor sufficient evidence of direct physical impact or trauma to the person of Mrs. Clark, defendant's motion for directed verdict must be and it is hereby granted as to any damages claimed by the plaintiffs arising from injury to her person.

The evidence is sufficient to sustain the plaintiffs' cause of action insofar as it relates to certain of their property located in and about the service station which they jointly own—e.g., the fuse box, water can, light bulbs and gas pumps. The evidence is silent, however, as to the monetary value of the damages resulting from injury to this property. Under these circumstances the plaintiffs are entitled to a judgment for nominal damages in the sum of $1.00 and their costs. To that extent defendant's motions for directed verdict and a new trial should be and they are hereby denied.

Counsel for defendant will draft an appropriate form of judgment and, after exhibiting it to plaintiffs' counsel, submit it to the court for signature.